IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-00252-RPM

LAURA RIDGELL-BOLTZ,

      Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner, United States Social Security Administration,

      Defendant.

_____

ORDER AWARDING ATTORNEYS' FEES AND COSTS
_____

After six days of trial and less than four hours of deliberation, a jury returned a verdict finding that the plaintiff Laura Ridgell-Boltz had proved her claim that termination of her employment in the Office of Regional Counsel of the Social Security Administration (Agency) in November, 2007, was in violation of Title VII of the Civil Rights Act of 1964 because her participation in the discrimination complaint process was a motivating factor in that decision. The jury found that Ms. Ridgell-Boltz was entitled to damages of $14,000.00 for out-of-pocket expenses and $5,000.00 for emotional distress, pain, suffering, embarrassment, humiliation or damages to reputation. Judgment was entered in accordance with that verdict on July 3, 2012.

On July 17, 2012, the plaintiff filed a motion for attorneys' fees and expenses pursuant to 42 U.S.C. § 2000e-5(k). (Doc. 138). Based on the time records submitted the plaintiff requested $321,750.23 for fees and costs of $2,326.34. The defendant filed a response in opposition to that motion on August 7, 2012. (Doc. 149). Admitting that

1

the plaintiff is the prevailing party in this litigation, the defendant asserts that the request is in a "staggering" amount and should be reduced by 90% to reflect the overall lack of success in the small award achieved compared with the claims originally asserted and the amount of damages requested in plaintiff's counsel's closing argument.

That objection has superficial appeal.  The back story of this litigation compels a different finding.

This case is unusual in many aspects.  The plaintiff made informal complaints of discriminatory treatment of older women lawyers in her office against supervisors of the same gender and comparable age in April, 2007.  When she made a formal complaint within the Agency, those supervisors terminated her employment within days.  Ms. Ridgell-Boltz was required to proceed within the Agency.  On June 25, 2008, the plaintiff's claims were rejected in a Final Agency Decision.

Because the issues included Merit Systems violations, she was required to appeal that agency decision to the Merit Systems Protection Board (MSPB) which she did on July 25, 2008.[1]  In those administrative proceedings, Ms. Ridgell-Boltz was represented by the same counsel who represent her in this civil litigation.  After an administrative hearing, the initial decision from the MSPB was that the termination was in violation of required personnel practices and a Letter of Warning rather than termination was the appropriate sanction for her conduct.  On July 9, 2009, the MSPB issued an opinion and order affirming the initial decision.  The claims of Title VII violations were denied by the MSPB.  Ms. Ridgell-Boltz was reinstated with back pay

---

[1]The complexity of the procedures required to be pursued by federal employees with mixed claims is explained in *Coffman v. Glickman*, 328 F.3d 619 (10th Cir. 2003).

and benefits.  She also received an award of attorneys fees.

At that time, Ms. Ridgell-Boltz had the choice of filing a petition to the EEOC Office of Federal Operations (OFO) or filing a complaint in this court.  She elected to proceed with the petition to the OFO in August, 2009.  Her appeal was denied in an opinion and order from the OFO issued January 5, 2010.  She then filed the complaint initiating this civil action on February 5, 2010.  The answer was filed on April 26, 2010, by Phyllis A. Dow, an Assistant U.S. Attorney in the District of New Mexico because the claims involved the plaintiff's appointment as a Special Assistant to the United States Attorney for this District.

A scheduling conference was held on June 18, 2010, and a Scheduling Order entered on that date.  In that order (Doc. 9), the plaintiff made the following proposed computation of damages.

> Ms. Ridgell-Boltz seeks compensatory and pecuniary damages for physical and mental health injuries.  These damages include reimbursement of approximately $1,500.00 for out-of-pocket medical expenses already incurred, plus a monetary award, in an amount not yet determinable, for future physical and emotional healthcare.

> Ms. Ridgell-Boltz seeks $300,000.00 in compensatory damages for emotional and physical distress arising from the Agency's discriminatory, retaliatory and statutory misconduct: damaged reputation, humiliation, embarrassment and physical consequences including insomnia, gastro-intestinal distress, anxiety and depression.

> Ms. Ridgell-Boltz requests pecuniary damages for losses and expenses she incurred as a result of her wrongful termination, to the extent such damages were not included in the Merit System Protection Board's Opinion and Order reinstating Ms. Ridgell-Boltz to her position.  In particular, Plaintiff seeks damages arising from involuntarily selling her home, medical expenses she incurred on behalf of herself and her children when she lost her health insurance, and finance, interest and penalty charges she incurred trying to pay her living expenses when she was unemployed.

Doc. 9, P. 6.

On August 30, 2010, Randilynn M. Lord and Raymond Hamilton, Assistant United States Attorneys in New Mexico, entered their appearance, replacing Ms. Dow. That substitution of counsel adversely affected discovery proceedings and on February 24, 2011, the plaintiff filed a motion to compel discovery.  On March 8, 2011, Phyllis A. Dow again filed a notice of appearance and in a motion to extend time to respond to the plaintiff's motion to compel, explained that Ms. Lord had been injured in an accident and Raymond Hamilton was retiring.  A hearing was held on April 19, 2011, which resulted in this Court ordering the production of documents which the Agency had withheld under claims of privilege.  At that hearing the Court also scheduled a pretrial conference for July 8, 2011.

Ms. Dow filed a Motion for Partial Summary Judgment and Memorandum in Support on April 27, 2011 (Doc. 43).  The defendant asserted a failure to exhaust the administrative remedies on her claim of harassment because it was not within the appeal to the MSPB and no finding was made on that issue.  The claim was said to be abandoned.  The defendant also sought dismissal of the Privacy Act claim, for lack of evidence.  The plaintiff filed a response on June 13, 2011 (Doc. 52).  A joint motion to extend discovery deadlines and vacate the pre-trial conference and the defendant's motion to extend time to file its reply on the motion for partial summary judgment were granted by an order entered on July 1, 2011. (Doc. 58).

A pre-trial conference was held on August 26, 2011, and a Pre-Trial Order was entered at that time.  (Doc. 63).  The trial time was estimated to be four days and trial was set to begin on January 17, 2012.  The defendant's motion for partial summary

4

judgment was denied by an oral ruling at the conference.  Attorneys Giel Stein and Andrew Maunz from the Agency were present at the conference but did not enter their appearance as co-counsel with Ms. Dow.

Ms. Dow filed a motion for reconsideration of that ruling on September 23, 2011. (Doc. 86). The plaintiff filed a lengthy response on October 17, 2011.  (Doc. 80).

Mr. Maunz filed a notice of entry of appearance on September 30, 2011, and Mr. Stein filed a notice of entry of appearance on October 17, 2011.  Mr. Stein signed the defendant's reply in support of the motion for reconsideration, filed on November 3, 2011 (Doc. 87). The reply emphasized the argument that a claim of harassment or hostile work environment was a claim separate and distinct from a disparate treatment claim and that claim had not been exhausted because it wasn't within the plaintiff's appeal to the MSPB.  The reply also contained additional argument on the Privacy Act claim.

The motion for reconsideration was addressed at a motion hearing and trial preparation conference held on December 29, 2011.  The plaintiff's ADEA claim was dismissed.  Assistant U.S. Attorney Ruth F. Keegan replaced Ms. Dow.  Mr. Stein appeared as lead counsel and Mr. Maunz also represented the defendant.  The court made oral rulings related to the scope of the evidence to be considered at trial, given the disputes in motions filed by both parties.  (Doc. 99).  The argument on exhaustion of administrative remedies on the harassment or hostile work environment was rejected.

The plaintiff sought reconsideration of the rulings on the scope of evidence by a motion filed on January 6, 2012.  (Doc. 102).  On January 9, 2012, the plaintiff filed a motion for sanctions or, alternatively to continue the trial date, set to begin on January

5

17, 2012.  (Doc. 103).  In that motion, plaintiff's counsel reported that on January 6, 2012, Mr. Stein and Ms. Keegan disclosed that two discs of electronic records had not been disclosed because of an admitted error by personnel in the New Mexico U.S. Attorney's Office.  Because plaintiff's counsel could not review the volume of documents on these discs before trial, the court vacated the trial date by order entered on January 10, 2012.  (Doc. 105).

On February 10, 2012, the court held a hearing on several motions and deferred ruling on the motion for sanctions until after the trial which was then scheduled to begin on June 25, 2012.  (Doc. 113).

A trial preparation conference was held on June 7, 2012.  The parties continued to disagree about evidentiary issues including what the jury should be told about the results of the administrative hearings.  (Doc. 117).

The Agency lawyers, Mr. Stein and Mr. Maunz, appeared for the defendant through the trial and all further proceedings without the participation of any lawyer from the New Mexico U.S. Attorney's Office.  The trial was very contentious with many evidentiary objections by both sides.  The verdict was received on July 2, 2012, and judgment for the plaintiff entered on July 3, 2012.  (Doc. 136).

On July 30, 2012, the defendant filed a motion for judgment notwithstanding the verdict or, alternatively, to alter or amend the judgment.  In that motion, counsel argued insufficiency of the evidence and error in the Court's jury instructions on retaliatory motive.  The defendant's motion was denied by this court's orders on post verdict motions (Doc. 16) entered on October 3, 2012.  That order also denied the plaintiff's motion for new trial claiming error in the Court's dismissal of her sex discrimination

claims (both hostile environment and disparate treatment) by granting the defendant's Rule 50 motion at the conclusion of the plaintiff's evidence.  The Court acknowledged that its oral reason was incorrect but repeated that the evidence was insufficient to support a finding that the discrimination was sufficiently severe or pervasive as to alter the terms and conditions of her employment, creating an abusive working environment.

The defendant filed a notice of appeal on November 30, 2012, (Doc. 169), and the plaintiff filed her notice of appeal on December 13, 2012.  The Agency filed a motion for voluntary dismissal of its appeal pursuant to Rule 42(b) which the plaintiff opposed and on June 19, 2013, the Tenth Circuit Court of Appeals entered an order granting the Agency's motion and denied the plaintiff's request for attorney's fees.

On April 30, 2014, the Tenth Circuit Court of Appeals entered an Order and Judgment reversing this Court's dismissal of the Title VII hostile work environment claim and remanding the case to this court "for further proceedings consistent with this order and judgment."  After receipt of the mandate, a conference after remand was held on July 11, 2014.  At that time, both the parties and the Court assumed that a new trial limited to the hostile work environment claim would be required.  The parties agreed that the case should be referred to a magistrate judge to convene a settlement conference and this Court ordered a reference for that purpose on July 11, 2014.  That effort was not successful and on August 28, 2014, an order entered setting a pre-trial conference for September 29, 2014.

That conference was held as scheduled on the assumption that a new trial was required by the mandate.  Plaintiff's counsel advised that a new EEOC charge of disparate treatment and hostility had been filed with the EEOC, based on the treatment

of Ms. Ridgell-Boltz after she was reinstated pursuant to the MSPB order.  It was agreed by plaintiff that the only damages to be claimed in a new trial were the emotional and reputational compensatory damages sustained up to the time of termination, November, 2007.  A pretrial order was entered and trial was scheduled to begin on May 11, 2015.

The lawyers returned to their polarizing style of advocacy.  There was fundamental disagreement as to the scope of the evidence to be presented at the trial of the discrete claim of a discriminatory hostile work environment.  The defendant asserted that no testimony or exhibits not admitted at the trial should be permitted at the new trial.  The plaintiff wanted to expand the testimony of co-workers Debra Meachum and Teresa Abbott and to present evidence concerning the system used to assign cases to counsel, withdrawing from a stipulation that had been read to the jury.

The disagreement on the stipulation was the subject of the defendant's motion, filed March 27, 2015, [Doc. 195] and the plaintiff's response, filed April 17, 2015, [Doc. 198].  On the same date the defendant filed a motion for pre-trial rulings or a conference to resolve disputed issues [Doc. 196].  An additional pre-trial conference was scheduled for April 23, 2015.

On April 21, 2015, this Court issued a "Proposed Ruling" advising the parties that as a result of its review of the evidence received at trial and the significance of the jury's verdict determining damages for retaliatory termination, there could be no additional damages awarded in a new trial limited to an age and sex discriminating hostile work environment as a discrete claim.  The plaintiff made her objections to that finding and conclusion on the record at an additional conference held on April 23, 2015.  The

8

defendant agreed with the Court's conclusion.

The Court vacated the trial and reserved entry of the proposed rulings to give time to consider the motion for attorneys' fees and ordered that the plaintiff may file a supplemental motion for attorney's fees and expenses.  The plaintiff did so on May 11, 2015. (Doc. 206).

The "Proposed Rulings" are being entered as a formal order simultaneously with this Order of Attorney's Fees.

The motion for attorneys' fees is in two parts.  Exhibit 10 to the motion identifies time and services performed by counsel in the appeal from the MSPB to the OFO.  A total of $8,627.50 is reported as the value for those services and the plaintiff claims they should be compensable because of the need to exhaust administrative remedies before proceeding in this court.  That claim is denied because the plaintiff had the option to file in this court without first appealing to the OFO.

For legal services leading to the filing and proceeding with this complaint, the plaintiff seeks a total of $313,122.73.  The hourly rate claimed is $350.00 per hour for Marisa Williams and Rhonda Rhodes and $200.00 per hour for work done by a contract attorney.  In response, the defendant objects to the hourly rate because it was the then current rate charged by counsel rather than the rate being charged under the original retainer.  The plaintiff justifies the current rate as being supported by precedents recognizing that there is a significant time delay in payment of fees under the fee-shifting statute.  That is, of course, amplified in this case given the years that have elapsed between the filing of the complaint and this ruling.

Controlling precedents require that the request for fees be determined by a

lodestar analysis to determine what services were necessary and then apply a reasonable hourly rate to the time reported in providing those services.

The defendant makes no effort to analyze the detailed record of services and this Court has not made an effort to review day-by-day time reports.  It is noted that the contract attorney has billed for such administrative work as driving time, loading and unloading vehicles and logistical assistance at trial.

This is a case where some proportionality between the services performed and the ultimate result achieved must be considered.  That does not mean a dollar comparison with the verdict because the plaintiff has performed a significant public service by showing that during the relevant time the SSA Office of Regional Counsel was dysfunctional and under the management of supervisors whose management skills and performance were deficient in many respects, including unfavorable treatment of older women working in the office, compared with younger women and male attorneys.

The Agency should be faulted for its failure to comply with the statutory requirements and the purpose of the Civil Rights Act.  It is ironic that a government agency would violate the protections afforded by the Civil Rights Act in the treatment of its employees and then vigorously attack the complaining employee when she attempts to seek redress in this court.

The hostility between Ms. Ridgell-Boltz and the Agency as shown by the evidence at trial and the excessive litigiousness in this protracted case is difficult to understand.  The lawyers for both parties in their zeal to defend their respective clients' positions have themselves been affected by that antagonism.

This case was delayed by the inattention given to it by the United States

10

Attorney's Office in New Mexico as reflected by the re-assignments of assistant attorneys and most significantly by the failure to produce documents before the eve of trial necessitating a continuance of several months.

When Agency counsel entered the case the proceedings changed in tone and the defense was pursued very aggressively.  It is somewhat problematic when a government agency is represented by counsel in its employ.  Trial advocates are expected to be objective in their assessment of their client's position and as officers of the court they are obliged to conduct the case in the spirit of Rule 1 of the Rules of Civil Procedure, seeking the just, speedy and inexpensive determination of the proceedings. That did not happen in this case.  Counsel for both parties disregarded that obligation and flooded the court with motions.

The lodestar analysis requires the court to determine the reasonableness of the time spent and the need for the services performed.  To sort through all of the time records provided and match the services identified with the large volume of motions filed for the plaintiff on which she prevailed and those which were denied would be an unreasonable burden on this court.

The supplemental motion is in four parts.  The first part seeks $9,860.00 for representation of the plaintiff in the OFO proceedings.  Second is a claim for the services in this suit through July 17, 2012, in the amount of $350,274.40 based on a recalculated rate of $400 per hour.  Third is a claim of $127,627.20 for the appeal to the Tenth Circuit Court of Appeals.  Fourth is a claim for $87,921.23 for services in this court from July 18, 2012, to the time of filing the motion.  As previously stated, the claim for services for the OFO appeal is denied as not necessary for the pursuit of this action.

The issue of a retroactive increase in the hourly rate is moot because a substantial discount of the claim is justified on the principle of proportionality to the results achieved on the claims made as discussed below.

The claim for fees for the appeal to the Tenth Circuit Court of Appeals is denied for lack of jurisdiction. *Hoyt v. Robson Companies, Inc.,* 11 F.3d 983, 985 (10th Cir. 1993).

The plaintiff claims $87,921.23 for services in this court from July 18, 2012, to the time of filing the supplemental motion.  These include opposition to the defendant's motion for judgment NOV and motion for new trial, dispute over the Clerk's taxation of costs and the plaintiff's motion for new trial.  Upon review of the time recorded and using the $350.00 per hour rate, the calculation for time spent in response to the defendant's post verdict motions is estimated to be seven hours, making an appropriate award of $2,450.00 for that service.  The plaintiff did not prevail on her motion for new trial and that motion was not necessary to proceed with her appeal of the Rule 50 ruling.

The total request for attorneys' fees now before the court is $575,682.83.  As previously observed the time records include services not compensable – the OFO fees of $9,860.00 and the appellate court fees of $127,627.20.  With those deductions, the amount is $438,195.63.

As previously noted, a proportionality reduction is appropriate although the comparison is not with the amount of the judgment obtained because Ms. Ridgell-Boltz has prevailed on the significance of the legal issue presented – retaliatory termination and served a significant public purpose in exposing a dysfunctional office charged with legal representation of a government agency that is responsible for implementation of

12

the Social Security Act.  It may be hoped that the revelations of this case will cause that agency to make the changes necessary to prevent a repetition of the hostile treatment of its employees that Ms. Ridgell-Boltz experienced during her employment and in the course of her efforts to seek relief in this litigation.

The plaintiff's attorneys bear some responsibility for multiplying the pleadings and delaying the trial.  There is precedent for applying a percentage reduction to a fee request much like that applied in adjudicating comparative fault in tort actions.

A reasonable adjustment in this case is a 45% reduction in the $438,195.63 total for compensable services, making the award $241,007.60.  The claimed costs of $2,326.84 are allowed.  The plaintiff's objections to the costs taxed by the Clerk, $1,185.05, are denied. (Doc. 150).  The claims for Tenth Circuit costs and supplemental costs are denied.

Accordingly, it is

ORDERED, that the defendant shall pay to the plaintiff an award of attorneys' fees in the amount of $241,007.60 and costs of $3,511.89.

DATED: July 28th, 2015

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge

\*\*\*\*

The substitution of Department of Justice lawyers for representation of the agency by its own lawyers may be considered a questionable conflict of interest which may explain the aggressiveness and lack of professional objectivity expected of counsel in these proceedings.  Plaintiff's counsel responded in a similar fashion making these proceedings unusually adversarial.

\*\*\*\*

        The time recorded for settlement discussions is not compensable.

        After the failure of settlement negotiations, The trial date of May 11, 2015, was vacated and the Court granted the plaintiff the opportunity to file the supplemental motions for attorneys' fees and costs and the defendant filed its response.  There is no need for oral argument because the briefing is adequate.

        The proposed ruling is being made a formal order concurrently with this order on fees.

\*\*\*\*

        The defendant filed several motions raising issues concerning the scope of the trial and asked for an additional pretrial conference which was held on April 23, 2015.  Prior to that conference, this Court entered a "Proposed Ruling" on April 21, 2015, in which the Court suggested that the plaintiff had been fully compensated for any emotional injury she sustained as a result of the defendant's conduct up to the time of her termination from employment and, accordingly, no new trial was warranted because there were no additional damages that could be awarded.  At the conference on April 23, 2015, the plaintiff made strong objections to the proposed rulings.